

**SO ORDERED.**

**SIGNED this 28 day of June, 2007.**

_____
**JAMES D. WALKER, JR.**
**UNITED STATES BANKRUPTCY JUDGE**
_____


UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 13 |
| | ) | CASE NO. 07-50302-JDW |
| RUPERT WHITE MURPHY, JR., | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

<u>COUNSEL</u>

For Debtor:   Jason M. Orenstein
              Post Office Box 4086
              Macon, Georgia 31208


For Creditor: Robert Fricks
              239-B Smithville Church Road
              Warner Robins, Georgia 31088

              Philip L. Rubin
              5555 Glenridge Connector, Suite 900
              Atlanta, Georgia 30342

**MEMORANDUM OPINION**

This matter comes before the Court on Citizens Auto Finance's objection to confirmation.

This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(L).  After considering the

pleadings, the evidence, and the applicable authorities, the Court enters the following findings of

fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

**Findings of Fact**

Debtor Rupert Murphy, Jr. filed a Chapter 13 petition on February 8, 2007.  He listed

Citizens Auto Finance ("CAF") as a partially secured creditor with a claim of $22,000 secured by

a 2003 Hyundai Santa Fe motor vehicle, which Debtor valued at $11,750.  Debtor's Chapter 13

plan proposes to split CAF's claim into secured and unsecured portions, to pay the secured

portion in full plus 8% interest, and to pay no dividend to the unsecured portion.  In other words,

the plan proposes to "cram down" CAF's claim.

The current case is Debtor's third bankruptcy case.  He filed a Chapter 7 on February 1,

1999, and received a discharge on May 19, 1999.  He then filed a Chapter 13 on July 21, 2006,

which was dismissed for lack of payment on December 28, 2006.

During the 2006 Chapter 13 case, CAF undisputedly held what is commonly called a 910

claim–a purchase money security interest, for a debt incurred during the 910 days prior to the

bankruptcy filing, secured by a motor vehicle purchased for the personal use of the debtor.  This

is significant because 910 claims receive special treatment in Chapter 13 pursuant to the hanging

paragraph in § 1325(a)(9).  However, when Debtor filed the current case, he did so on the 915th

day after acquiring the Hyundai, raising a dispute about whether CAF continues to be eligible for

treatment as a 910 claimant.

CAF filed an objection to confirmation on the ground that Debtor filed the current case in bad faith. The Court held a hearing on the objection on May 21, 2007. During the hearing, Debtor testified he had no significant change in debt or income between the filing of his 2006 case and the filing of his current case. His expenses also remained the same. However, in May 2007, he changed apartments and reduced his monthly rent from $525 to $400. Debtor further testified that his first case failed because the plan payments increased from $300 to $520 to accommodate CAF's status as a 910 claimant.

Also during the hearing, Debtor's counsel offered additional explanation for Debtor's current situation. Debtor could not file a Chapter 7 case because he would have been ineligible for a discharge due to the timing of his prior Chapter 7 discharge.[1] When Debtor filed his prior Chapter 13 case and plan, counsel was unsure which judge would be assigned the case. Because Chief Judge Hershner and I follow different interpretations of the hanging paragraph with respect to 910 claims,[2] counsel initially filed a plan proposing a cram down (which resulted in a plan payment affordable for Debtor) and later amended the plan to treat CAF's claim as fully secured after Judge Hershner was assigned to the case. Debtor was unable to afford the amended plan payment. However, he did pay $1,200 into the plan at a monthly rate of $300 for four months prior to dismissal of the case.

---

[1] A debtor may not receive a Chapter 7 discharge if he has received a Chapter 7 discharge in a case filed within 8 years of the petition date in the current case. 11 U.S.C. § 727(a)(8).

[2] Compare In re Green, 348 B.R. 601, 611 (Bankr. M.D. Ga. 2006) (Walker, J.) (requiring the greater of payment of the claim in full without interest or cram down) with In re Brown, 346 B.R. 246, 248 (Bankr. M.D. Ga. 2006) (Hershner, C.J.) (requiring payment of the claim in full with interest).

For the reasons that follow, the Court finds Debtor filed his current case and plan in good

faith.  Therefore, CAF's objection will be overruled.

### Conclusions of Law

At issue in this case is confirmation of Debtor's Chapter 13 plan.  The Court must

confirm the plan if it complies with the requirements of § 1325(a) of the Bankruptcy Code.  The

hanging paragraph after § 1325(a)(9) mandates special treatment[3] for creditors with "a purchase

money security interest securing the debt that is the subject of the claim, the debt was incurred

within the 910-day [period] preceding the date of the filing of the petition, and the collateral for

that debt consists of a motor vehicle ... acquired for personal use of the debtor ...."  11 U.S.C. §

1325(a), hanging paragraph.   In addition, § 1325(a)(3) and (7) can operate as a bar to

confirmation in the absence of good faith by Debtor.  "[T]he court shall confirm a plan if ... (3)

the plan has been proposed in good faith and not by any means forbidden by law; [and] ... (7) the

action of the debtor in filing the petition was in good faith[.]" 11. U.S.C. § 1325(a)(3), (7).

The parties do not dispute that under Debtor's prior Chapter 13 case, CAF was entitled to

the special treatment set forth in the hanging paragraph.  In the current case, CAF meets all the

criteria for special treatment except that the debt was incurred outside the 910-day period prior to

the bankruptcy filing.  CFS argues that Debtor acted in bad faith by waiting for the lookback

period to expire before refiling his case.[4]

---

[3] Such claims are not subject to bifurcation under § 506.  11 U.S.C. § 1325(a)(9), hanging
paragraph.

[4] At the hearing, CAF raised and abandoned an equitable tolling argument.  Generally,
equitable tolling applies when a party's time to protect a right has been curtailed.  See Young v.
U.S., 535 U.S. 43, 47, 122 S. Ct. 1036, 1039 (2002).  In this case, the 910-day time period is not
a period during which the creditor must take some steps to protect its rights.  Instead, it is simply

The term "good faith" is not defined by the Bankruptcy Code.  However, courts in the

Eleventh Circuit evaluate a debtor's good faith–or lack of good faith–based on the totality of the

circumstances in accordance with a non-exclusive list of factors[5] set forth in Kitchens v. Georgia

Railroad Bank and Trust Company (In re Kitchens), 702 F.2d 885, 888-89 (11th Cir. 1983).  The

factors are merely a guide, and "'[b]roadly speaking, the basic inquiry should be whether or not

under the circumstances of the case there has been an abuse of the provisions, purpose or spirit of

[the chapter] in the proposal.'"  Id. at 888, (quoting 9 Collier on Bankruptcy ¶ 9.20 (14th ed.

1978)).  See also In re Roberts, 339 B.R. 807, 811 (Bankr. M.D. Ga. 2006); In re Roberts, No.

06-71277, 2007 WL 981642, at *4 (Bankr. N.D. Ala. March 29, 2007).

CAF argues the totality of circumstances in this case indicate bad faith by Debtor.  In his

prior Chapter 13 case, Debtor proposed a plan that was contrary to law–by proposing to cram

---

a formula for determining whether a claim will be subject to § 506 of the Bankruptcy Code.

[5] The factors are as follows:
(1) the amount of debtor's income from all sources;
(2) the debtor's living expenses;
(3) the amount of attorney's fees;
(4) the duration of the Chapter 13 plan;
(5) the debtor's motivations and sincerity in seeking Chapter 13 relief;
(6) the debtor's degree of effort;
(7) the debtor's earning ability and the likelihood of fluctuation in his earnings;
(8) special circumstances such as inordinate medical expense;
(9) the frequency with which the debtor has sought bankruptcy relief;
(10) the circumstances under which the debtor has contracted his debts and his demonstrated
bona fides, or lack of same, in dealings with his creditors;
(11) the burden of the plan's administration on the trustee;
(12) the substantiality of the repayment to unsecured creditors;
(13) whether the debt would be nondischargeable under Chapter 7; and
(14) the accuracy of the plan's statements of debts and expenses and whether any inaccuracies
are an attempt to mislead the court.
702 F.2d at 888-89.

down a 910 claim.  When Judge Hershner, who does not approve cram down of 910 claims over

objection, was assigned to the case, Debtor did not immediately modify the plan.  Instead, he

waited to modify until prompted to do so by CAF's objection to confirmation.  His proposed

modification was infeasible because it required a plan payment greater than Debtor's ability to

pay.  According to CAF, by first proposing an improper plan and then pursuing an infeasible

plan, Debtor was merely attempting to run out the 910-day clock.

Debtor agrees that a previous case filed solely for purposes of delay could be evidence of

bad faith in the current case.  However, he argues his prior case was not filed to delay CAF while

the lookback period ran.  On the contrary, Debtor did everything he could to make the first plan

feasible because he needed to retain the car.  He simply could not afford the payments after

modifying the plan.  Debtor also concedes lack of good faith might be shown if he had attempted

to hide the car from CAF or otherwise to prevent repossession during the period between his two

Chapter 13 cases.  However, there is no evidence Debtor played hide and seek with the car or that

CAF attempted to repossess it.  In fact, CAF did not object to Debtor's motion to extend the

automatic stay in the current case.[6]

The Chapter 13 trustee points out that Debtor's first case was filed at a time when the law

was uncertain with respect to 910 claims.[7]  Furthermore, just because a debtor is unsuccessful at

---

[6] The automatic stay is limited to 30 days if the debtor had a prior case dismissed during
the year prior to the filing of the current case.  11 U.S.C. § 362(c)(3)(A).  The Court may extend
the stay upon motion of a party in interest.  Id. § 362(c)(3)(B).

[7] The uncertainty remains, although the passage of time has seen virtually all judges
accept the majority view adopted by Judge Hershner and reject the minority view applied by me.
The issue currently is on appeal to the Eleventh Circuit Court of Appeals, so any remaining
uncertainty–at least in this circuit–should soon be resolved.  DaimlerChrysler Fin. v. Robinson,
11th Cir. Docket No. 07-12247.

maintaining a plan that includes a 910 claim, all future cases should not per se require 910

treatment for that claim (assuming the claim still survives).  Also, car creditors sometimes agree

to accept less than the full amount of their claim, because they prefer reduced payment to

surrender of the vehicle.

The Court agrees with Debtor and the Chapter 13 trustee that Debtor's case was neither

filed nor his plan proposed with a lack of good faith.  CAF argues Debtor's prior Chapter 13 case

was an insincere attempt to reorganize filed solely to run out the 910-day clock.  However, the

facts do not support CAF.  Debtor's attempt to cram down CAF's claim in his previous Chapter

13 case is a reflection of both uncertainty in the law and of Debtor's attempt to obtain the most

favorable terms.  Although the Bankruptcy Code provides special treatment for 910 claims, it

does not require such treatment if the parties agree otherwise.  Thus, in the circumstances,

Debtor's proposed cramdown can be viewed as akin to a negotiation tactic, not evidence of bad

faith.  While the prior case was pending, Debtor made regular plan payments totaling $1,200,

which demonstrates his intent to follow through with the case.  It was the objection of CAF that

put the plan out of his reach.  CAF did not want to compromise with Debtor on an affordable

plan in the prior case, it did not attempt to recover its collateral after Debtor's bankruptcy failed,

and it is unsatisfied with Debtor's renewed effort to repay at least the value of the car.  But, just

because CAF is frustrated by its current position does not mean Debtor has acted with bad faith.[8]

---

[8] This case illustrates the impact of the hanging paragraph of the Bankruptcy Abuse
Prevention and Consumer Protection Act of 2005.  Debtor could have afforded to pay the value
of the car $11,750 (the amount the creditor would have realized upon liquidation of the car).
Judge Hershner, following the majority view, required Debtor to pay an additional $10,000, the
undersecured component of CAF's 910 claim, in full with interest.  Consequently, the plan
failed; no creditors were paid; and, without the fortuitous expiration of the 910 period, Debtor
would have been left with no remedy to avoid the loss of the car, his only means of transportation

For the foregoing reasons, the Court concludes Debtor filed this case and proposed his

Chapter 13 plan in good faith.  Therefore, CAF's objection to confirmation will be overruled.

An Order in accordance with this Opinion will be entered on this date.


END OF DOCUMENT

---

to work.  Other cases of this sort either die the same quiet death by dismissal or never get filed.